BRIDGES *v.* STATE OF INDIANA.

[No. 1269S278. Filed November 5, 1970. No petition for rehearing filed.]

*John G. Bunner,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Kenneth M. Mc-Dermott,* Assistant Attorney General, for appellee.

GIVAN, J.—Appellant was charged by indictment with the crime of second degree murder. Trial by jury resulted in a

finding of guilty of the lesser included offense of manslaughter. Appellant was sentenced to the Indiana State Prison for a period of two to twenty-one years and disfranchised for a period of four years.

The facts disclosed by the record are as follows:

On March 30, 1968, Howard W. Harper, Jr., was found dead on a gravel road in Vanderburgh County. He had severe injuries to his head and neck. After investigation by the Sheriff of Vanderburgh County warrants for the arrest of the appellant were sent to various localities including Louisville, Kentucky.

On April 21, 1968, the appellant was arrested in Louisville, Kentucky, on a charge of malicious shooting and wounding with intent to kill arising out of an incident unrelated to the case at bar.

On April 22, 1968, the appellant appeared in the daily show-up where Louisville police officers observed the newly arrested prisoners. At that time a police officer recognized the appellant as the same person for which the arrest warrants had been issued out of Vanderburgh County. The appellant was afforded all of the warnings required under *Miranda* v. *Arizona* (1966), 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694. Following these warnings appellant was advised that he was wanted in Evansville, Indiana, for auto theft and suspicion of murder. The Kentucky authorities notified the Indiana authorities that the appellant was in custody.

Deputy Sheriffs O'Risky and Gibbs were sent from Evansville to Louisville. Immediately upon coming into the presence of the appellant they identified themselves as representatives of the Vanderburgh County Sheriff's Department. They advised the appellant that they wanted to talk to him about the theft of an automobile and the death of the owner of the automobile. They advised the appellant of his constitutional rights in keeping with the *Miranda* decision, *supra*. Immediately after the oral warning as to his constitutional rights

the officers took the appellant to an interview booth where they asked the appellant to read aloud a written instrument captioned Advisement of Rights and Waiver. After first reading this instrument aloud the appellant then signed the same. This instrument which is State's Exhibit "B" in the record before us reads as follows:

## "ADVISEMENT OF RIGHTS AND WAIVER

Date 4-22-68                    Place Jefferson Co. Ky. Jail
                                        Louisville, Kentucky

I, James A. Bridges, voluntarily-without threats, duress, force, promises of immunity or reward-agree to be questioned by the Vanderburgh County Sheriff's Department, Evansville, Indiana.

I fully realize that I have the right to remain silent the entire time I am here, anything I may say can and will be used against me in any court of law, I have the right to have an attorney present, and if I cannot afford an attorney and desire to be represented, one will be appointed for me prior to any questioning.

Even after signing this form, I realize that I have the opportunity to exercise these rights at any time I wish to while I am here. I also realize that I have the right to first consult with an attorney or anyone else I wish to before signing this form or answering any questions. Nevertheless, I voluntarily request and authorize the Vanderburgh County Sheriff's Department to proceed with the questioning.

In addition, I represent that I feel all right both mentally and physically, and I know of no mental or physical ailment which might be impaired by any questioning.

IMPORTANT NOTICE: IF YOU DO NOT UNDER-
STAND ANY PART OF THIS FORM, DO NOT SIGN
UNTIL YOU DO.                                        ~~A.M.~~

                        James A. Bridges          5:30 P.M.

                        Signature                       Seal

R. H. ORisky Jr.

Charlie Gibbs

Witnesses

A̶.̶M̶.̶

This questioning was concluded at 6:30 P.M. on the above date. I completely re-affirm my above agreement and that I knowingly and intelligently continued to waive all my rights, including those listed in the second paragraph above.

I also state that during the entire time I was well-treated, submitted myself freely to the questioning knowing that I could stop the questioning any time I so desired by merely saying I wished it to stop or that I wished to consult with an attorney. Also, there were no threats, promises, inducements, or any harm done to me during the entire time I have been here, either in connection with the questioning or the signing of this form.

James A. Bridges
—————————————
Signature        Seal

R. H. ORisky Jr.
—————————————
Charlie Gibbs
—————————————
Witnesses

State's Ex B"

In his statement to the police officers the appellant related that he met a man on Friday night near the Evansville bus station; that after riding around with the man in his automobile, they drove out into the country where the man made unnatural sex overtures. The appellant grabbed a tire iron which was in the man's car and hit him in the head three or four times.

The appellant then drove the man's car to Hopkinsville, Kentucky, and later to Indianapolis.

At the time the statement was taken by the officers the officers also drew a diagram depicting the general area at the scene of the killing, which was shown to the appellant and with which he concurred.

At the conclusion of the interview the appellant stated to the deputies that he wished to get back to Indiana and start serving his sentence, asking them to see if they could get the Kentucky charges dropped. However, the appellant was prosecuted in Kentucky where he remained incarcerated on

that charge for a year. He was then removed to Vanderburgh County where he was tried in the case at bar.

Appellant makes several assignments of error, all of which revolve about the legality of the questioning of the Louisville police officers and of the Vanderburgh County officers when they first interviewed him in Louisville.

Appellant in response to a series of questions on direct examination stated that he was not advised of his constitutional rights. This is in direct contradiction to the testimony of the police officers. We have repeatedly stated that we will not weigh conflicting evidence in this Court. *Smith* v. *State* (1969), 252 Ind. 425, 18 Ind. Dec. 189, 249 N. E. 2d 493. We find that there is ample evidence to sustain a finding of fact that both the Louisville police and the Evansville police officers gave full and complete "Miranda" warnings before any interrogation of the appellant occurred.

Appellant also states that at the time the questioning occurred he was only advised that he was being questioned concerning automobile theft in Vanderburgh County; that he did not know the owner of the car had died as a result of his injuries. This is again in direct contradiction of the testimony of the police officers. The Louisville police officers specifically stated that they advised appellant that he was wanted for questioning in Indiana concerning automobile theft and murder, and the Vanderburgh County deputy sheriffs testified that this same information was given to the appellant before they asked him to sign any waiver or asked any questions concerning the incident.

Appellant himself on direct examination during the trial in describing his first confrontation in the office of a detective for the City of Louisville stated, "He said we have a warrant for you from Indiana for willful murder and auto theft, so he showed me my picture." It thus becomes quite apparent from the evidence in this record including the testimony of the appellant himself that long before he was asked any

questions concerning his involvement in the crime charged he was well aware of the fact that the man whose automobile he was accused of taking had died, and that the appellant was suspected of having killed him. The record in this case clearly demonstrates that the appellant had every constitutional warning required by law prior to any questioning or any admissions by him. The State proved by independent evidence that the decedent had in fact been fatally injured by a series of severe blows to the head and neck. The properly obtained confession of the appellant was sufficient to enable the jury to identify him as the person who had in fact caused the death of the decedent. We find no error in this record.

The trial court is, therefore, affirmed.

Hunter, C.J., Arterburn and DeBruler, JJ., concur; Jackson, J., concurs in result.

NOTE.—Reported in 263 N. E. 2d 368.