FRED LONZO HUTTS *v*. STATE OF INDIANA.

[No. 1-473A59. Filed July 25, 1973.]

*Peter J. Marietta*, of Newport, for appellant.

*Theodore L. Sendak*, Attorney General, *John H. Meyers*, Deputy Attorney General, for appellee.

LOWDERMILK, J.—Defendant-appellant was charged by affidavit with assault and battery on a female child under the age of twelve. Appellant filed a Motion to Suppress prior to trial, seeking to suppress an identification of him by the alleged victim and to suppress any statement given by him to police officers. A hearing was held on said motion and the court sustained the motion to suppress the identification but did not suppress the statement.

Trial was had to the court without the intervention of a jury and appellant was found guilty as charged. Judgment was duly entered thereon and appellant was sentenced to the Department of Correction for a period of not less than two (2) nor more than twenty-one (21) years.

Appellant timely filed his motion to correct errors, which was overruled by the court, and this appeal was perfected.

The first issue raised by the motion to correct errors is whether the court erred by not suppressing testimony concerning statements made by the appellant to certain police officers. Basically, it is appellant's position that the oral statements should have been suppressed for the reason that appellant did not meaningfully waive his constitutional rights, more commonly known as "Miranda rights." *Miranda* v. *Arizona* (1966), 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694.

After appellant signed his waiver card he declined to make a written statement, but soon thereafter he did voluntarily make an oral confession. Appellant contends that such conduct is controlled by the case of *U.S.* v. *Nielson* (7th Cir. 1969), 392 F. 2d 849, where the court found constitutional violations. However, *Nielson* is distinguishable from the case at bar. The accused in *Nielson* absolutely refused to sign any waiver card and specifically demanded an attorney. The court held that such conduct should have put the interrogators on notice of the accused's wish to remain silent even though he subsequently answered questions. The court stated that the burden was on the interrogators to inquire into the reason for the apparent change in position to determine if the change was intelligently and understandingly made.

In the case at bar the appellant was orally informed of his rights and was read his rights from the waiver card, which he signed. Additionally, appellant had made no request for an attorney. It is our opinion that simply refusing to give a written statement is not conduct sufficient to fall within the *Nielson, supra,* holding.

Appellant further relies on the testimony of Deputy Sheriff Finney, who stated on cross-examination that it was his impression the appellant signed the waiver card to acknowledge his understanding of his rights. Deputy Finney also had the impression that the appellant wished an attorney. Appellant contends that this testimony shows that he did not waive his rights, but merely understood them.

On redirect examination, Deputy Finney expressed his opinion that appellant understood his rights and stated that the appellant was clearly informed that he need not make any statement unless voluntary.

Sheriff Cooper and Deputy Finney testified that the defendant's "Miranda rights" were orally given to him at the time of his arrest. Immediately prior to questioning the sheriff read the rights waiver card aloud to the defendant. Thereafter, the defendant read the card and signed the waiver. An examination of the card shows that it is modeled closely after the *Miranda* decision and, in our opinion, was more than adequate to inform the defendant of his rights. The waiver is plain and unambiguous. The testimony of the sheriff and deputy discloses that the oral statement was made voluntarily by the defendant. Sheriff Cooper testified that no force, coercion, promises, or threats were made to appellant. Thus, it is our opinion that the State satisfied the heavy burden of demonstrating that appellant knowingly and intelligently waived his rights. *Miranda* v. *Arizona, supra.*

Our Supreme Court set out the requirements and tests for waiver of constitutional rights in the case of *Lewis* v. *State* (1972), 259 Ind. 431, 288 N.E.2d 138, as follows:

"It is a long and well established principle that alleged waivers of such fundamental constitutional rights as the right to counsel and against self-incrimination will only be upheld after careful inquiry into their basis. *Johnson* v. *Zerbst* (1938), 304 U.S. 458, 58 S. Ct. 1019, 82 L. Ed. 1461; *Brady* v. *United States* (1970), 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747. The State bears the burden

of showing that the accused was informed of his rights in clear and unambiguous language. *Miranda* v. *Arizona* (1966), 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694; *United States ex rel. William* v. *Twomey*, 467 F. 2d 1248 (7th Cir. 1972). If an accused decides to waive these rights he must be sufficiently aware of the consequences of what he is doing and he must make his decision voluntarily, knowingly and intelligently. *Miranda* v. *Arizona, supra; Nacoff* v. *State* (1971), 256 Ind. 97, 267 N.E.2d 165; *Mims* v. *State* (1970), 255 Ind. 37, 262 N.E.2d 638. In order to insure that the accused's waiver is a knowing and intelligent one the courts have considered such factors as his educational level, the seriousness and complexity of the charge lodged against him, his mental condition, and his age. *Von Moltke* v. *Gillies* (1948), 332 U.S. 708, 68 S. Ct. 316, 92 L. Ed. 309; *Williams* v. *Peyton*, 404 F. 2d 528 (4th Cir. 1968) ; *Day* v. *United States*, 357 F. 2d 907 (7th Cir. 1966)." See, also, *Dickerson* v. *State* (1972), 257 Ind. 689, 276 N.E.2d 845; *Jones* v. *State* (1969), 253 Ind. 235, 252 N.E.2d 572.

The evidence most favorable to the State discloses that the defendant was adequately informed of his constitutional rights. This court will not weigh conflicting testimony. *Bridges* v. *State* (1970), 255 Ind. 201, 263 N.E.2d 368. The trial court's finding on the waiver and admissibility of the statements was supported by substantial evidence. *Lynn* v. *State* (1971), 255 Ind. 631, 266 N.E.2d 8. *Smith* v. *State* (1969). 252 Ind. 425, 249 N.E.2d 493.

Since the appellant was adequately informed of his rights and made a voluntary, knowing and intelligent waiver, the statements made to the sheriff and deputy were properly admitted. *Emler* v. *State* (1972), 259 Ind. 241, 286 N.E.2d 408.

Appellant next contends that the in-court identification by the victim was tainted by an illegal pre-trial confrontation and should have been inadmissible. He contends that under the guidelines set out in *U.S.* v. *Wade* (1967), 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149, he was denied a fair trial

as a result of the illegal pre-trial confrontation and an allegedly tainted in-court identification.

Appellant points out that the victim identified a photograph taken of the appellant on the day of his arrest. She further gave testimony as to the appearance of her assailant which was in conflict, in some respects, to testimony given by three defense witnesses. It is well established that this court will not weigh the evidence but will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. *Jackson* v. *State* (1971), 257 Ind. 589, 275 N.E.2d 538; *Emler* v. *State, supra.*

Defendant-appellant contends that an illegal pre-trial confrontation took place on the day of appellant's arrest. However, the State made no attempt to introduce evidence based on this alleged confrontation. The record discloses that the victim positively identified the appellant in court.

The victim was allowed to examine a picture of the appellant, taken the day of his arrest, and the victim positively identified the picture as depicting the man who attacked her.

Our Supreme Court, in the case of *Johnson* v. *State* (1972), 257 Ind. 682, 278 N.E.2d 577, summed up the rule of *Wade, supra,* and other similar cases as follows:

"However, where the in-court identification is challenged as having been subjected to the improper influence of an unlawful confrontation, the occurrence of which has been brought to light by the defendant, the prosecution will be given the opportunity, and must carry the corresponding burden, to establish by clear and convincing evidence, that the in-court identification was free of taint from the illegal one. The application of this rules will compel law enforcement authorities to exercise all due care to assure the opportunity of the presence of counsel at out-of-court identification confrontations but will, nevertheless, avert the loss to the state of valid identification testimony in those rare cases where the witness may have been erroneously subjected to the improper influence, unless the state commits the additional error of capitalizing upon that influence."

In *Johnson, supra,* the victim of a burglary made an in-court identification. There had also been a questionable out-of-court identification. Our Supreme Court discussed the problem as follows:

"Applying these rules, we must admit the illegality of the out-of-court confrontation and would apply the per se exclusionary rule as to it and its fruits. But it is clear from the record that the in-court identification by Mrs. Overbay was not tainted by the illegal confrontation but had an independent origin. She witnessed the defendant come out her front door and run right by her. He got into his car but had difficulty starting it. She stood approximately ten feet from him and talked to him for a period of from one to two minutes. . . ."

In the case of *Wilson* v. *State* (1970), 253 Ind. 585, 255 N.E.2d 817, a woman was kidnapped and raped. The following day she gave the police a detailed description of her assailant. Our Supreme Court stated:

"There was no question in the prosecutrix's mind to the identity of her assailant. She stated she was with the appellant for about one (1) hour. He talked to her freely and made no attempt to conceal his identity. He attempted to persuade her to have another rendevous with him, but to no avail. She had ample opportunity to take notice of his clothing and physical characteristics. This is not a case of a witness merely getting a fleeting glimpse of a fleeing suspect. . . .

\* \* \*

On the basis of the record before us we therefore find that the in-court identification of the appellant by the prosecutrix as her assailant had a sufficient independent origin from the alleged prejudicial pre-trial confrontation. *United States* v. *Wade* (1967), 388 U.S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149. . . ."

In the case at bar the young victim was with the appellant for some period of time, in his automobile. She had ample opportunity to view the appellant and recognize him. She gave the police a detailed description of her assailant, which

bore a striking resemblance to the appellant, and her description of the car into which she was forced at gun point by the appellant was more than adequate.

Thus, it is our opinion that there was more than sufficient evidence to demonstrate that the in-court identification had a sufficiently independent source and was properly admitted. *U.S.* v. *Wade, supra.*

Judgment affirmed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported at 298 N.E.2d 487.